UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 20-mj-687 (WMW/LIB) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Robert Dale LaTourell, Jr. (1), <br> Melinda May LaTourell (2), <br> Melissa Ann LaTourell (3), | |
| Defendants. | |

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, and upon Defendants Robert Dale LaTourell, Jr. and Melinda May LaTourell's Motion to Dismiss, [Docket Nos. 37, 39], Defendant Robert Dale LaTourell, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 38],[1] and Defendant Melissa Ann LaTourell's Motion to Dismiss Information, [Docket No. 46]. The Court held a Motions Hearing on January 21, 2021, regarding Defendants' pretrial motions at which Defendant Robert Dale LaTourell, Jr. requested the opportunity to submit supplemental briefing on his dispositive motions. The supplemental briefing was completed on March 2, 2021, after which Defendants Robert Dale LaTourell, Jr. and Melinda May LaTourell's Motion to Dismiss, [Docket Nos. 37, 39], Defendant Robert Dale LaTourell, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 38], and Defendant Melissa Ann LaTourell's Motion to Dismiss Information, [Docket No. 46], were taken under advisement.[2]

---

[1] At the January 21, 2021, Motions Hearing, Defendant Melinda May LaTourell clarified for the Court that she did not intend to join in Defendant Robert Dale LaTourell's motion to suppress evidence. (Tr. [Docket No. 58], at 14).
[2] The Court addressed Defendants' pretrial discovery motions by separate Order. [Docket No. 60].

For the reasons discussed herein, the Court recommends that: Defendants Robert Dale LaTourell, Jr. and Melinda May LaTourell's Motion to Dismiss, [Docket Nos. 37, 39], be **DENIED**; Defendant Robert Dale LaTourell, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 38], be **DENIED**; and Defendant Melissa Ann LaTourell's Motion to Dismiss Information, [Docket No. 46], be **DENIED**.

I. **Background and Statement of Facts**

   A. **Background**

Defendants Robert Dale LaTourell, Jr., Melinda May LaTourell, and Melissa Ann LaTourell are charged by Information with one count of Conspiracy to Violate the Lacey Act, in violation of 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(2) and 18 U.S.C. §§ 2, 371. (Indictment [Docket No. 1]).

   B. **Facts**

In 2012, the U.S. Fish and Wildlife Service, as well as, several other federal, state, and Canadian agencies began a joint investigation into illegal fishing activities near Prairie Portage. (Tr. [Docket No. 58], at 25, 27). The fishing activities of Defendants Robert LaTourell, Jr., Melinda LaTourell, and Melissa LaTourell, among others, were the focus of the joint investigation. (Id. at 25–27).

On December 1, 2016, a search warrant (the "Search Warrant") for LaTourell's Moose Lake Outfitters (the "Outfitters") was executed as part of the joint investigation.[3] (Id. at 20–21). The Search Warrant covered both the business and residence portion of the Outfitters. (See, Id. at 21; Govt.'s Exs. 2, 3). Special Agent Patrick Lund ("SA Lund") and Special Agent Ron Armstrong ("SA Armstrong") with the U.S. Fish and Wildlife Service were part of the team that

---

[3] At the Motions Hearing, the Government, without objection, offered the Application for a Search Warrant and Affidavit into evidence as Government's Exhibit 2, and the Government, without objection, offered the Search and Seizure Warrant and the Return into evidence as Government's Exhibit 3. (Id. at 15–16).

executed the Search Warrant. (Tr. [Docket No. 58], at 19–20). Both SA Lund and SA Armstrong created audio recordings of the execution of the Search Warrant and the interview of Defendants Robert LaTourell, Jr. and Melinda LaTourell.[4] (Id. at 20).

SA Lund and SA Armstrong had wanted to interview Defendants Robert LaTourell, Jr. and Melinda LaTourell prior to executing the Search Warrant, but when they arrived at the Outfitters there was nobody in the office building. (Id. at 28). SA Armstrong called the number that he had for the LaTourells, and he reached Robert LaTourell, Sr. who provided his son's cell phone number. (Id. at 28, 32). SA Armstrong then called Defendant Robert LaTourell, Jr. on his cell phone, and SA Armstrong told Robert LaTourell, Jr. that he wanted to discuss a report of illegal fishing that Robert LaTourell, Jr. had allegedly reported the previous year. (Id. at 32, 34). Robert LaTourell, Jr. informed SA Armstrong that he was on the way to his daughter's basketball game approximately 90 miles from the Outfitters, and he offered to meet with the agents the following day. (Id. at 34). During that call, SA Armstrong did not inform Robert LaTourell, Jr. that he was under investigation, nor did SA Armstrong inform Robert LaTourell, Jr. of the Search Warrant. (Id.).

Shortly thereafter, at approximately 3:43 p.m., SA Armstrong started his recording, and he and SA Lund made contact with Defendant Melinda LaTourell while other agents began executing the Search Warrant. (Govt.'s Ex. 1 at 00:00–2:30). SA Armstrong informed Melinda LaTourell of the Search Warrant, requested that she open the office building, and informed her that she does not have to speak with them. (Id. at 2:35–4:15; Tr. [Docket No. 58], at 35). Melinda LaTourell then called Robert LaTourell, Jr., and SA Armstrong spoke with him after being handed the phone. (Tr. [Docket No. 58] at 21–22, 36). At that time, SA Armstrong informed

---

[4] At the Motions Hearing, the Government, without objection, offered the audio recording created by SA Armstrong into evidence as Government's Exhibit 1. (Id. at 15–16).

3

Robert LaTourell, Jr. of the Search Warrant, and that they were looking for records related to cisco fishing. (Id. at 36–37; Govt.'s Ex. 1 at 7:35, 9:50–10:40). SA Armstrong also informed Robert LaTourell, Jr. that the Search Warrant was for the residence and business there, not for Robert LaTourell, Jr. personally. (Tr. [Docket No. 58], at 37; Govt.'s Ex. 1 at 10:40).

Robert LaTourell, Jr. stated that he had cisco fishing records with him and at his personal residence, and he stated that he would gladly provide SA Armstrong with the records.[5] (Tr. [Docket No. 58], 37–39, 47). Robert LaTourell, Jr. and SA Armstrong agreed to meet around 10:00 a.m. the next day. (Govt.'s Ex. 1 at 13:50–15:15).

Following SA Armstrong's conversation with Robert LaTourell, Jr., the agents continued executing the Search Warrant. Later, SA Armstrong again spoke with Robert LaTourell, Jr. (Id. at 20:55). There had been some confusion between SA Armstrong and Robert LaTourell, Jr. during their previous conversation as to whether the meeting scheduled for the next morning would postpone the execution of the Search Warrant. (Tr. [Docket No. 58], at 42). SA Armstrong informed Robert LaTourell, Jr. that he could not postpone the execution of the Search Warrant. (Id. at 42–43; Govt.'s Ex. 1 at 21:25–26:10). SA Armstrong also informed Robert LaTourell, Jr. that the Search Warrant covered business records related to cisco fishing, as well as, some other items, and the agents were in the process of searching the premises and would seize any such items that they found. (Govt.'s Ex. 1 at 23:05–27:30). Robert LaTourell, Jr. indicated that he might come back that evening, but he did not commit to doing so at that time. (See, Id. at 26:45–30:00; Tr. [Docket No. 58], at 39–40).

Eventually, Robert LaTourell, Jr. returned to the Outfitters, and he brought a briefcase with him. (Tr. [Docket No. 58], at 22). SA Lund and SA Armstrong then interviewed Robert

---

[5] During the call, SA Armstrong and SA Lund learned that Robert LaTourell, Jr. did not live at the Outfitters. (Id. at 39).

LaTourell, Jr. and Melinda LaTourell at a table in the kitchen area of the residence portion of the Outfitters. (Id. at 22, 48). At the outset of the interview, Robert LaTourell, Jr. and Melinda LaTourell were informed that they were not under arrest and did not have to speak to the interviewers. (Id. at 23; Govt.'s Ex. 1 at 2:10:25). Robert LaTourell, Jr. was also given a copy of the Search Warrant for his inspection, and SA Armstrong offered to answer any questions that Robert LaTourell, Jr. had about the Search Warrant.[6] (Govt.'s Ex. 1 at 2:14:05–2:15:30).

The interviewers stated that they were conducting an investigation into illegal cisco fishing in the area around Prairie Portage. (Id. at 2:16:10). The interviewers began the interview by initially questioning Robert LaTourell, Jr. and Melinda LaTourell about a report of illegal fishing that was allegedly made by Robert LaTourell, Jr. the previous year. (See, e.g., Id. at 2:16:55). However, the interviewers subsequently indicated that they had also received reports of Robert LaTourell, Jr. and Melinda LaTourell fishing illegally in Canada, and the interviewers then proceeded to question Robert LaTourell, Jr. and Melinda LaTourell about their own fishing activities. (See, e.g., Id. at 2:47:40).

Twice during the interview, Robert LaTourell, Jr. provided the interviewers with some documents that he had brought with him in his briefcase. (Tr. [Docket No. 58], at 48; see also, Id. at 23, 44; Govt.'s Ex. 1 at 2:34:15). The interviewers asked if they could keep the documents when Robert LaTourell, Jr. first provided them, and Robert LaTourell, Jr. affirmatively stated that they could. (Tr. [Docket No. 58], at 23, 44; Govt.'s Ex. 1 at 2:34:35). Later, Robert LaTourell, Jr. handed additional documents to the interviewers. (Id. at 24, 48; see also, Govt.'s Ex. 1 at 3:48:30–3:49:15). Some of the documents Robert LaTourell, Jr. provided were copied and returned to Robert LaTourell, Jr., but the interviewers kept the originals of certain

---

[6] Melinda LaTourell had previously been given a copy of the Search Warrant. (See, Id. at 2:10:45).

5

documents. (Tr. [Docket No. 58], at 24). In total, the interviewers kept 15 pages of documents that Robert LaTourell, Jr. gave them from his briefcase. (Id.).

On September 10, 2020, Defendants Robert LaTourell, Jr., Melinda LaTourell, and Melissa LaTourell were charged by Information with one count of Conspiracy to Violate the Lacey Act, in violation of 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1) and 18 U.S.C. §§ 2, 371. (Indictment [Docket No. 1]). Specifically, the Information charges that Defendants:

> conspired and agreed, together and with others, to commit an offense against the United States, that is to knowingly import, transport, sell, receive, acquire, and purchase wildlife, specifically ciscoes (Coregonus artedi) in interstate and foreign commerce, when in the exercise of due care, **ROBERT DALE LATOURELL, JR., MELINDA MAYLATOURELL, and MELISSA ANN LATOURELL** should have known that said wildlife was taken, possessed, transported, and sold in violation of and in a manner unlawful under the laws and regulations of the Province of Ontario, Canada . . . .

(Id. ¶ 8) (emphasis in original). In support of the charge, the Information alleges that Defendants unlawfully harvested ciscoes in Canadian waters using seine nets and other methods. (See, Id. ¶¶ 3, 5, 11). Defendants then imported, possessed, transported, and sold the ciscoes for a profit. (Id. ¶¶ 12, 14–15). And Defendants, through the exercise of due care, should have known that the ciscoes they harvested were taken, possessed, and sold in violation of Canadian law. (Id. ¶ 13).

**II.   Defendants Robert Dale LaTourell, Jr. and Melinda May LaTourell's Motion to Dismiss, [Docket Nos. 37, 39], and Defendant Melissa Ann LaTourell's Motion to Dismiss Information, [Docket No. 46]**

Defendants move the Court for an Order dismissing the Information on grounds that it charges Defendants with conspiring to commit a negligent act. (Mot. to Dismiss, [Docket Nos. 37, 39]; Mot. to Dismiss Information, [Docket No. 46]; see also, Mem. in Supp. [Docket No. 61], at 2–13). Defendants assert that they "are charged with entering into an agreement to negligently fish in Canada." (Mem. in Supp. [Docket No. 61], at 6). Defendants further assert that "[a] conspiracy requires that the defendants enter into an agreement to commit an illegal act." (Id.).

6

Therefore, Defendants contend that the Information charges them with "a legal impossibility," and "it should be dismissed." (Id. at 13).

### A. Standard of Review

"The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "To be sufficient, the information must contain the elements of the offense and inform the defendant of the charges against him, as well as 'enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Gilkerson, 556 F.3d 854, 856 (8th Cir. 2009) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)); see also, United States v. Huggans, 650 F.3d 1210, 1217 (8th Cir. 2011) (quoting United States v. Summers, 137 F.3d 597, 601 (8th Cir. 1998)) ("An indictment is sufficient if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution."). "An information satisfies these requirements if it states 'the offense in the words of the statute itself.'" Gilkerson, 556 F.3d at 856 (quoting Hamling, 418 U.S. at 117).

"An indictment [or information] will ordinarily be considered sufficient 'unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense' at issue." United States v. Gaines, No. 20-cr-20 (MJD/HB), 2020 WL 5215386, at *2 (D. Minn. Aug. 4, 2020), report and recommendation adopted by 2020 WL 5204284 (D. Minn. Sept. 1, 2020) (quoting United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009)); accord, Huggans, 650 F.3d at 1217. "In making that assessment, '[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true.'" Gaines, 2020 WL 5215386, at *2 (alteration in original) (quoting Hayes, 574 F.3d at 472).

"A defendant may raise by pretrial motion any objection, including a challenge to the sufficiency of an indictment [or information], that the Court can 'determine without a trial on the merits.'" Gaines, 2020 WL 5215386, at *2 (quoting Fed. R. Crim. P. 12(b)(1)). Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), the sufficiency of an indictment or information may be challenged for "failure to state an offense."

### B. Analysis

As a preliminary matter, this Court notes that Defendants have incorporated facts from outside the four corners of the Information in support of their argument for dismissal. (See, e.g., Id. at 5). Specifically, Defendants incorporate details about the location of the Canadian border to support their contentions that they were engaged in "apparently innocent conduct" and "there was no way to know where the border was." (See, e.g., Id. at 5–13).

When considering a motion to dismiss the indictment on the basis of insufficiency, "[o]rdinarily, the Court's assessment is limited to the 'four corners' of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment." United States v. Hughson, 488 F. Supp. 2d 835, 841 (8th Cir. 2007) (citing United States v. Hall, 20 F.3d 184, 1087 (8th Cir. 1994)); see also, United States v. Augustine Med., Inc., No. 03–cr–321(1–8) (ADM/AJB), 2004 WL 256772, at *2, (D. Minn. Feb. 10, 2004) (citation omitted) ("In reviewing a 12(b) motion to dismiss the indictment, the Court does not entertain an evidentiary inquiry, but rather accepts the allegations of the Indictment as true.")). There is an exception, however, "where the underlying facts are essentially undisputed . . . 'it is permissible and may be desirable . . . for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently

8

for a sustainable case.'" Hall, 20 F.3d at 1087 (quoting United States v. Brown, 925 F.2d 1301, 1304 (10th Cir. 1991)).

Here, this Court finds that it would be inappropriate to consider evidence beyond the four corners of the Information because the underlying facts remain in dispute. Moreover, to the extent Defendants argue that the Information should be dismissed because they were engaged in "apparently innocent conduct" and "there was no way to know where the border was," Defendants argument concerns not only disputed facts but also the ultimate merits of the case. As such, it is premature in the present facial challenge to the sufficiency of the Information. See, e.g., United States v. Mitlof, 165 F. Supp. 2d 558, 567 (S.D.N.Y. 2001) ("A decision about whether [the defendant's] conduct was 'apparently innocent' (which would indeed open up the question reserved in Feola[7]) cannot be made on a motion to dismiss the indictment for facial insufficiency."). Therefore, the Court will only consider the allegations within the four corners of the Information in deciding Defendants' present motions to dismiss, [Docket Nos. 37, 39, 46].

The Information charges Defendants with one count of Conspiracy to Violate the Lacey Act. (Information [Docket No. 1]). It is unlawful under the Lacey Act to "import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law." 16 U.S.C. § 3372(a)(2)(A). Pursuant to the misdemeanor provision of the Lacey Act, under which Defendants have been charged:

> "[a]ny person who knowingly engages in conduct prohibited by any provision of this chapter . . . and in the exercise of due care should know that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation shall be fined not more than $10,000, or imprisoned for not more than one year, or both.

---

[7] United States v. Feola, 420 U.S. 671 (1975).

16 U.S.C. § 3373(d)(2) (emphasis added). "Thus the misdemeanant must have actual knowledge that he is importing or exporting the animals, etc., but need not know that they were taken or possessed illegally, so long as in the exercise of due care he should know." United States v. Santillan, 243 F.3d 1125, 1129–30 (9th Cir. 2001).

Defendants assert that they "are charged with entering into an agreement to negligently fish in Canada," and Defendants further assert that "[a] conspiracy requires that the defendants enter into an agreement to commit an illegal act." (Mem. in Supp. [Docket No. 61], at 6). Therefore, Defendants contend that the Information charges them with "a legal impossibility," and "it should be dismissed." (Id. at 13). However, Defendants misstate the nature of the Lacey Act and the allegations against them.

Defendants are not, as they contend, charged with conspiring to negligently fish in Canada. Rather, Defendants are charged with conspiring to knowingly import, transport, sell, receive, acquire, and purchase ciscoes, when in the exercise of due care Defendants should have known the ciscoes were taken in violation of Canadian law. (Id. at 3). Defendants are correct "that one cannot conspire to commit a negligent or unintentional act." See, United States v. Sdoulam, 398 F.3d 981, 987 (8th Cir. 2005). However, Defendants are charged with conspiring to commit the intentional act of knowingly importing, transporting, selling, receiving, acquiring, and purchasing ciscoes, which they should have known was illegal. See, United States v. Thomas, 887 F.2d 1341, 1347 (9th Cir. 1989) (finding that conspiracy to violate the misdemeanor provision of the Lacey Act did not charge the defendant with conspiring to do a negligent act, but charged him with conspiring to do an intentional act that he should have known was illegal); see also, Sdoulam, 398 F.3d at 987–88 (alterations and emphasis in original) (quoting 21 U.S.C. § 841(c)(2)) (finding a charge of conspiracy to violate a statute that "imposes

10

criminal sanctions on '[a]ny person who <u>knowingly</u> or <u>intentionally</u> . . . possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance . . .'" was a charge of "conspiring to commit an intentional act").

Because Defendants are charged with conspiring to commit an <u>intentional</u> act—i.e., <u>knowingly</u> importing, transporting, selling, receiving, acquiring, and purchasing ciscoes—when in the exercise of due care Defendants should have known the ciscoes were taken in violation of Canadian law, the charge "satisfies the specific intent requirement [of conspiracy] and does not give rise to a 'legal impossibility.'" <u>Sdoulam</u>, 398 F.3d at 988; <u>see also</u>, <u>United States v. Hansel-Sturm</u>, 44 F.3d 793, 795 (9th Cir. 1995) (citing <u>Thomas</u>, 887 F.2d at 1346–47) ("[C]onspiracy in violation of 18 U.S.C. § 371 can be proved when the conspirators agree to conduct which they should have known was in violation of the Lacey Act."). Thus, Defendants' argument that the Information should be dismissed because it charges them with "a legal impossibility" fails. <u>See</u>, <u>Sdoulam</u>, 398 F.3d at 988, <u>Hansel-Sturm</u>, 44 F.3d at 795; <u>Thomas</u>, 887 F.2d at 1346–48.

Accordingly, this Court recommends that Defendants Robert Dale LaTourell, Jr. and Melinda May LaTourell's Motion to Dismiss, [Docket Nos. 37, 39], be **DENIED**, and Defendant Melissa Ann LaTourell's Motion to Dismiss Information, [Docket No. 46], be **DENIED**.

**III.    Defendant Robert Dale LaTourell, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 38]**

Defendant Robert Dale LaTourell, Jr. moves the Court for an Order suppressing the "evidence seized from Mr. LaTourell's person on December 1, 2016." (Mot. to Suppress Evid. Obtained as a Result of Search and Seizure [Docket No. 38]), Specifically, Defendant Robert LaTourell, Jr. seeks to suppress the documents that he brought to the Outfitters in his briefcase

and gave to SA Lund and SA Armstrong during the interview. (Mem. in Supp. [Docket No. 61], at 14–16).

### A. Standard of Review

The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.

"[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010) (alteration in original) (quoting Minnesota v. Dickerson, 508 U.S. 366, 372 (1993)). "Although a warrantless search presumptively violates the Fourth Amendment, voluntary consent to search is a well-recognized exception to the warrant requirement." United States v. Golinveaux, 611 F.3d 956, 959 (8th Cir. 2010). Importantly, however, consent must be voluntarily given.

An inquiry into the voluntariness of consent "turns on the totality of the circumstances, which must demonstrate that the police reasonably believed the search to be consensual." United States v. Zamoran–Coronel, 231 F.3d 466, 469 (8th Cir. 2000); see also, United States v. Quintero, 648 F.3d 660, 667 (8th Cir. 2011); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000). Relevant factors regarding the individual allegedly providing consent include:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals.

United States v. Golinveaux, 611 F.3d 956, 959 (8th Cir. 2010). The Court should also consider the environment in which the individual's consent was obtained including:

12

> (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a seclude location; and (6) whether the individual stood by silently or objected to the search.

Id. These "factors are valuable as a guide to analysis," however, "these factors should not be applied mechanically." United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990).

In determining whether an individual has expressed consent, "[t]he precise question is not whether [the defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001) (citing United States v. Sanchez, 32 F.3d 1330, 1333–35 (8th Cir. 1994)). "Consent . . . may be inferred from the subject's 'words, gestures, and other conduct.'" United States v. Magallon, 984 F.3d 1263, 1280 (8th Cir. 2021) (quoting United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004)). The Government has the burden to show, by a preponderance of the evidence, that a defendant's consent was voluntary. See, United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005).

**B. Analysis**

In the present motion, Defendant Robert LaTourell, Jr. does not challenge the validity of the Search Warrant, he only challenges the validity of his consent. (See, Mem. in Supp. [Docket No. 61]). Therefore, the only issue presently before this Court is whether Robert LaTourell, Jr.'s consent was valid at the time that he gave the interviewers documents from his briefcase.

Robert LaTourell, Jr. argues that his consent was not willing and voluntary because "he merely acquiesced to a claim of lawful authority." (See, Id. at 14–16). Specifically, Defendant asserts that he "returned to the [Outfitters] and turned over his documents to the agents only after

13

being repeatedly told that they were covered by a search warrant the agents were commanded to execute." (Id. at 16).

"The test applied to determine if consent is free and voluntary is whether, in light of the totality of the circumstances, consent was given without coercion, express or implied." United States v. Escobar, 389 F.3d 781, 784–85 (8th Cir. 2004). "Thus, consent is involuntary when 'under all the circumstances it . . . appear[s] that the consent was . . . granted only in submission to a claim of lawful authority.'" United States v. Larson, 978 F.2d 1021, 1023 (8th Cir. 1992) (alterations in original) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). However, the test is not whether Robert LaTourell, Jr. subjectively intended to consent, but whether objectively "his conduct would have caused a reasonable person to believe that he consented." Jones, 254 F.3d at 695; see also, Cedano-Medina, 366 F.3d at 684–85 ("In other words, a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent."). Based on the totality of the circumstances in the present case, this Court concludes that Defendant's consent was willingly and voluntarily given.

SA Armstrong expressly informed Robert LaTourell, Jr. that the Search Warrant was for the residence and business at the Outfitters, not for him personally. (Tr. [Docket No. 58], at 37; Govt.'s Ex. 1 at 10:40). SA Armstrong later informed Robert LaTourell, Jr. that although they had agreed to meet the following morning, the execution of the Search Warrant would not be postponed, and any business records related to cisco fishing that the agents found while executing the Search Warrant would be seized. (Tr. [Docket No. 58], at 42–43; Govt.'s Ex. 1 at 21:25–27:30). SA Armstrong did not instruct or request Robert LaTourell, Jr. to return to the Outfitters. To the contrary, SA Armstrong informed Robert LaTourell, Jr. that he was not

required to return to the Outfitters while the Search Warrant was being executed. (Govt.'s Ex. 1 at 27:50). Nevertheless, Robert LaTourell, Jr. indicated that he might come back that evening, without committing to doing so. (See, Govt.'s Ex. 1 at 26:45–30:00; Tr. [Docket No. 58], at 39–40).

Robert LaTourell, Jr. did indeed return to the Outfitters, and he was subsequently interviewed by SA Lund and SA Armstrong. (Tr. [Docket No. 58], at 22). At the outset of that interview, the interviewers expressly informed Robert LaTourell, Jr. that he was not under arrest and did not have to speak to the interviewers. (Id. at 23; Govt.'s Ex. 1 at 2:10:25). Robert LaTourell, Jr. was also given a copy of the Search Warrant for his inspection. (Govt.'s Ex. 1 at 2:14:05–2:15:30). The Search Warrant plainly indicates that it is for the residence and business located at the Outfitters. (Govt.'s Exs. 2, 3). The interviewers stated that they were conducting an investigation into illegal cisco fishing in the area around Prairie Portage. (Id. at 2:16:10). Shortly thereafter, Robert LaTourell, Jr. gave the interviewers with documents from his briefcase, and he affirmatively stated that the interviewers could keep those documents. (Tr. [Docket No. 58], at 23, 44, 48; see also, Id. at 23, 44; Govt.'s Ex. 1 at 2:34:15).

Nothing in the present record indicates that Robert LaTourell, Jr. was intoxicated or under the influence of drugs, nor that his ability to voluntarily consent was impaired in any other way. To the contrary, the present record demonstrates that Robert LaTourell, Jr. was able to comprehend and appropriately respond to the interviewers' questions. (See, Govt.'s Ex. 1 at 2:10:25–4:35:00). The present record further demonstrates that the interview was conducted in a conversational tone, and the interviewers never raised their voices to yell or threaten Robert LaTourell, Jr. or Melinda LaTourell. Nor did the interviewers make any promises or utilize any physical intimidation to induce Robert LaTourell, Jr.'s consent. (See, Id.).

15

The interview took place at a table in the kitchen area of the residence portion of the Outfitters. (Tr. [Docket No. 58], at 22, 48). Robert LaTourell, Jr. was not in custody during the interview, and he was not physically restrained in any way. Two interviewers, SA Lund and SA Armstrong, and two interviewees, Robert LaTourell, Jr. and Melinda LaTourell, were present during the interview. (Id. at 22). Although there were eight to ten other agents executing the Search Warrant, they were mostly in other rooms during the interview and when Robert LaTourell, Jr. provided the documents from his briefcase. (See, Id. at 44–45).

In sum, at the time Defendant Robert LaTourell, Jr. gave the interviewers documents from his briefcase, he had already expressly been informed that: The Search Warrant was for the Outfitters, not him personally; he was not required to return to the Outfitters while the Search Warrant was being executed; he was not under arrest; he did not have to speak to the interviewers; and the interviewers were conducting an investigation into illegal cisco fishing. Robert LaTourell, Jr. had also been provided a copy of the Search Warrant. Therefore, this Court finds that the present record objectively indicates that Robert LaTourell, Jr.'s consent was willing and voluntary, and he did not merely acquiesce to a claim of lawful authority.

Moreover, there is nothing in the present record that indicates Robert LaTourell, Jr.'s characteristics or the environment where the interview took place rendered him especially susceptible to coercion. Nor is their anything in the present record that indicates the interviewers engaged in coercive tactics to induce Robert LaTourell, Jr.'s consent. As such, this Court concludes the totality of the circumstances objectively indicate that Defendant Robert LaTourell, Jr.'s consent was valid at the time that he gave the interviewers documents from his briefcase, and those documents were lawfully seized without any violation of his Fourth Amendment right.

Therefore, this Court recommends that Defendant Robert Dale LaTourell, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 38], be **DENIED**.

IV. **Conclusion**

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants Robert Dale LaTourell, Jr. and Melinda May LaTourell's Motion to Dismiss, [Docket Nos. 37, 39], be **DENIED**;

2. Defendant Robert Dale LaTourell, Jr.'s Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 38], be **DENIED**; and

3. Defendant Melissa Ann LaTourell's Motion to Dismiss Information, [Docket No. 46], be **DENIED**.

Dated: March 31, 2021                              s/Leo I. Brisbois
                                                   Leo I. Brisbois
                                                   U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.